DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## MARCH TERM, 1868.

---

### GULICK & HOLMES v. JOHN GROVER.

### CALVIN B. HOLMES v. THE SAME.

1. The making of accommodation paper, or the loan of one's name as security for another, does not come within the ordinary business in which persons engage. The authority to use a principal's name for that purpose, is not established by proof of an agency, however general, in the transaction of the principal's business, even though, in connection with such business, it be shown that the agent was authorized to make notes in the name of his principal. To validate such paper, it must be shown that the agent was authorized to use his principal's name for *that* purpose, and his authority must either be express, or implied from proof that he was accustomed, with the principal's consent, to use his name for the accommodation of others.

2. Where the business of a husband is managed, generally, by his wife, as his agent, who was accustomed, with his knowledge, to sign his name to notes and checks given in the course of his business, the liability of the husband for all notes made by her in the course of his general business, will result from such general authority, but that liability will extend no further than to include such notes as were given in the usual course of business, and will not extend to accommodation paper, signed by her in his name, without his knowledge or consent.

463

3. Where the husband, in a conversation had with a party with whom he was dealing in purchasing goods, used in a business which was managed by his wife, and in which she was accustomed to transact all the business—buying the goods, and paying for them in notes and checks in his name—says, on being inquired of, if his wife's transacting and doing business in his name was all right, that it was—it was the same as if he did it himself—whatever she did was right—*held*, that these expressions must be construed with reference to the business then being transacted between the parties, and which was then the subject-matter of discussion, and will not be construed as an authority to the wife to use her husband's name to accommodation paper; and the husband is not liable on accommodation paper subsequently made by her in his name, without his knowledge, which was taken by the party with whom such conversation was had, with a knowledge of the purpose for which it was made.

4. A subsequent ratification of an act done by another, assuming to act in the capacity of agent, though without any precedent authority, creates the relation of principal and agent; and after such ratification, the principal is bound by the act, to the same extent as if it had been done by his previous authority. But in order to a ratification, a full knowledge of all the facts and circumstances attending the transaction is essential.

5. Accepting and retaining the benefits of an unauthorized contract of the agent, with a full knowledge of all the circumstances, may well be held to be a ratification of the contract. But where an agent, without the knowledge of the principal, loans his principal's money to a third person, and afterwards makes a note in the principal's name, without his knowledge, for a larger sum, which is discounted for the accommodation of such third person, and out of the proceeds of such discount, the agent is repaid the sum so loaned, and applies it to the principal's benefit; if the principal, immediately on being notified of the use of his name to such accommodation paper, disavows the act of the agent, he is not to be held to have ratified the act of the agent, because he does not voluntarily offer to restore the money, which was paid to the agent out of the proceeds of such discount, in payment of such unauthorized loan.

6. Where the facts are undisputed, the question whether an agent has the requisite authority to bind his principal, is a question of law for the court, whether such authority is sought to be sustained by a previous authorization, or by a subsequent ratification.

These cases were tried together below, and were argued together here. They were previously before the Supreme Court on a rule to show cause why a former verdict in favor of the plaintiffs should not be set aside. On the hearing of

that rule, a new trial was granted.  The opinion of the Supreme Court will be found in 2 *Vroom* 182.

By agreement between the attorneys of the parties, the evidence taken at the former trial was read to the jury empaneled to re try the causes, and the opinion of the Supreme Court, with the exception of the concluding paragraphs in relation to so much of the proceeds of the notes as were paid to the defendant's wife, was read to the jury, as the charge of the judge.  Verdicts were rendered accordingly for the defendant.  Exceptions were taken to the charge, which were removed to this court by writ of error.

For plaintiff in error, *Thos. N. McCarter*.

For defendants in error, *H. V. Speer* and *J. Van Dyke*.

DEPUE, J.   On the argument, no objections were taken to the general principles of law stated by the Supreme Court, as determining the liability of a principal for the acts of his agent.  The bill of exceptions raises the question whether the judge was justified in instructing the jury, in conformity with that opinion, that upon the facts proved, the plaintiffs were not entitled to recover, without leaving any questions of fact to the jury.

The notes were signed in the defendant's name, by his wife, without his knowledge or consent, and were loaned by her without her husband's knowledge, to John R. Holmes, as a means of raising money for his benefit.  The plaintiffs in both suits had knowledge that the notes were mere accommodation, or lent paper, for the benefit of John R. Holmes.  The case, therefore, is not embarrassed by those considerations which arise out of the fact that the holder of a negotiable note is a *bona fide* holder without notice of the purpose for which it was made.  The question is purely one of the authority of the wife to bind the husband, by signing these notes.

The liability of the husband, on the argument, was put by

the counsel on three grounds.  1. That the making of these notes, for the purpose for which they were used, was within the scope of her authority, as evidenced by the course of her usual employment.  2. That the defendant held his wife out to the plaintiffs as having competent authority to affix his name to notes for all purposes whatsoever.  And, 3, that the notes, though invalid against him when made, became valid obligations by a subsequent ratification.

It appears from the evidence, that the wife was formerly in the wine business, which was conducted by her in her husband's name, and at the time of the making of the notes the defendant as in the drug business at New Brunswick, which was carried on in his son's name, but the defendant was the owner of the goods put in the business, and furnished the capital with which it was conducted.  The wife was the manager of the business, and attended chiefly to the buying and selling.  The moneys received were deposited by her in the banks, in his name, and were drawn out frequently on checks, signed by her in her husband's name, and she also signed his name to notes which were given for debts incurred in the course of the business.  Some of these transactions in relation to the wine business were had with the firm who are the plaintiffs in one of these suits, and extended down to about the time of the making of these notes, when their accounts were closed by a note, signed by the wife in the name of the husband.  This use of his name by his wife was known to him, and the notes so given were paid by him, or by her out of his funds.

It may be stated, as the result of the evidence, that in the usual business of the defendant, his wife was his general agent, and was, with his knowledge and consent, accustomed to sign his name to notes and checks made in the course of such business.  But it does not appear that the wife ever, except in the instances of these two notes, signed her husband's name to accommodation paper, or used it as security for other persons.  From this general authority would result a liability of the husband for all notes made by her in

his name, in the course of his general business; but that liability would extend no further than to include such notes as were given in the usual course of business. I take the rule to be well settled, that the authority to sign accommodation paper, or as security for a third person, must be specially given, unless the authority of the agent is one of universal agency, and will not flow from any general authority to transact business for the principal. The making of accommodation paper, or the loan of one's name as security for another, does not fall within the ordinary business in which persons engage   The authority to use a principal's name for that purpose, is not established by proof of an agency, however general, in the transaction of the principal's business, even though in connection with such business it be shown that the agent was authorized to make notes in the name of his principal.   To validate such paper, it must be shown that the agent was authorized to make use of his principal's name for *that* purpose; and his authority must either be express or implied from proof that he was accustomed, with the principal's consent, to use his name for the accommodation of others.   An agent who is authorized to draw and endorse notes, and to draw, endorse, and accept bills of exchange, can act under such authority only to the extent of his principal's business, and is not authorized to draw, endorse, or accept them for the accommodation of mere strangers. *Story on Agency*, § 69 ; *Bank of Hamburgh* v. *Johnson*, 1 *Richardson* 42 ; *Odiorne* v. *Maxey*, 13 *Mass.* 181 ; *North River Bank* v. *Aymer*, 3 *Hill* 262 ; *Steinbach* v. *Read*, 11 *Gratton* 281 ; *Kingsley* v. *The State Bank*, 3 *Yerger* 107 ; *Wallace* v. *The Branch Bank*, 1 *Ala.* 565.

The evidence relied on to fix the defendant's liability, because of his having held his wife out as having an authority which would include the power to make these notes in her husband's name, is that of Francis H. Holmes and James C. Gulick, the plaintiffs in one of these suits.   Mr. Francis H. Holmes says :

" I have known John Grover twenty-five years; dealt with

him that time; I purchased goods from Grover first; I paid some money and some notes; Mary Ann Grover transacted his business; he said, in 1838, what his wife did in a business way was right—he sanctioned it."

Mr. James C. Gulick says:

" I have known defendant since May, 1848; he has dealt with me from that time to time notes in suit were given, off and on; Mr. Grover was engaged in wine business; the purchases he made of us were in that business; during that time Mrs. Grover acted in that business with me, representing her husband; the goods were paid for in notes and checks . Mrs. Grover did all the business—bought, paid, and gave the notes; John Grover's name was signed to those notes; I was at John Grover's residence in August, 1849; I spoke to him about the way his wife was doing business with us; I asked him if his wife transacting and doing business in his name was all right; he said it was—it was the same as if he did it himself—whatever she did was right; after that time we continued to do business in the same way; notes and checks were given, signed John Grover; it was all done by Mrs. Grover, in her husband's name; from that time to the present, John Grover has never countermanded those instructions."

The plaintiffs rely upon these general expressions as to the extent of the authority the defendant had conferred on his wife, as declarations that she was empowered to use his name, in her discretion, without limitation, for all purposes, at her pleasure, and that that authority not being revoked by notice to them, was still subsisting when the notes were given, and covered that particular transaction. Treating these expressions as the evidence of an express authority, the question becomes one merely of construction.

One of these conversations took place twenty-three years, and the other twelve years, before the making of these notes.

At the time of the conversation with Mr. Holmes, he was in business at Cranberry, in this state, and his transactions with Grover were in purchasing goods of him. At the

period referred to by Mr. Gulick, he and Mr. Holmes were together in the mercantile business in New York, and the dealings of the defendant with the firm were confined solely to the purchase by Mrs. Grover of goods to be used in the manufacture of wines, which was then carried on in the husband's name.    These dealings continued down to September, 1858, and were always of the same character.    The conversations in which these expressions were used, were directly in connection with the business then being transacted by Mr. Grover with the parties, and had express reference to the manner in which Mrs. Grover was using her husband's name and credit in the business.    Obviously, the language used must be construed with reference to the business then being transacted between the parties, and which was then the subject matter of discussion.    And any general expressions used by the defendant in relation to the extent of his wife's authority must be restricted to 'such business.    An universal agency, such as this is claimed to have been, can only be created by clear and unequivocal language, and will not be inferred from any general expressions, however broad. Mr. Justice Story, in his work on agency, says :    " It may, perhaps, be well to add, that general agents are to be carefully distinguished from universal agents ; that is, from agents who may be appointed to do all the acts which the principal can personally do, and which he may lawfully delegate the power to another to do.    Such an universal agency may potentially exist ; but it must be of the very rarest occurrence.    And indeed it is difficult to conceive of the existence of such an agent practically, inasmuch as it would be to make such an agent the complete master, not merely *dux facti,* but *dominus rerum,* the complete disposer of all the rights and property of the principal.    It is very certain that the law will not, from any general expressions, however broad, infer the existence of any such unusual agency ; but it will rather construe them as restrained to the principal business of the party in respect to which it is presumed his intention to delegate the authority was principally directed."

*Story on Agency,* § 21. Language, however general in its form, when used in connection with a particular subject matter, will be presumed to be used in subordination to that matter, and therefore is to be construed and limited accordingly. *Story on Agency,* §§ 62, 69 ; *Rossiter* v. *Rossiter,* 8 *Wend.* 494 ; 1 *Am. Leading Cases (4th ed.)* 566.

A letter of attorney, authorizing one to issue notes in the name of the principal, will be construed as extending only to notes issued in the business of the principal, or for his benefit. If the intent be that the attorney may issue notes for his own benefit, or the benefit of a third person, the authority must expressly so declare. *North River Bank* v. *Aymar,* 3 *Hill* 262. A power of attorney to collect debts ; to execute deeds for lands ; to authorize a complete adjustment of all concerns of the constituent in a particular place ; and to do all other acts which the constituent could no in person, does not authorize the giving of a note by the attorney in the name of the principal. *Rossiter* v. *Rossiter,* 8 *Wend.* 494. A letter of attorney, to ask, demand, and receive of the E. I. Company all money that might become due the principal, on any account whatsoever, and to transact *all business,* will not authorize the attorney to endorse away a bill taken by him under this power. The words, *all business,* must be confined to all business necessary for the receipt of the money. *Hay* v. *Goldschmidt,* cited in *Hogg* v. *Smith,* 1 *Taunt.* 349 ; *Attwood* v. *Munnings,* 7 *B. & C.* 278 ; *Chitty on Bills* 29.

Adopting these settled rules of construction, it is manifest that the expressions of the defendant as to his wife's unlimited power to act for him in his name, must be referred to the general business he was then engaged in, or in which he might subsequently engage. That the notes were taken in the belief that she had the authority to make them, is immaterial. The material question is, what authority, in point of fact, did the husband confer on his wife, by the language he used, construed according to the recognized rules of construction? The act done was one requiring a special au-

thority, and a party dealing with an agent, and knowing the nature of the act, must see to it that the agent possess the requisite authority to bind his principal.

The burthen of proof lies on him.

The facts relied on to establish a subsequent ratification are these: The notes bear date, respectively, on the seventh and twenty-third of September, 1861, and were discounted in the early part of October, in the same year. John R. Holmes owed Mrs. Grover $350, which he had borrowed of her, without her husband's knowledge. On the ninth of October, and before the note held by Calvin B. Holmes was discounted, Mrs. Grover called on him with an order, signed by John R. Holmes, bearing date on the third of October, 1861, for $350. Mr. C. B. Holmes then advanced $100 on account of this order, and on the same day (October ninth) Mrs. Grover gave to Frederick Hale, a druggist in New York, an order on C. B. Holmes for $250, signed by her in her own name, which order Mr. Holmes accepted and paid. It is assumed that this $250 was a payment to Hale of a debt due by the defendant to him for drugs.

A subsequent ratification of an act done by another, assuming to act in the capacity of an agent, though without any precedent authority, creates the relation of principal and agent, and after such ratification the principal is bound by the act, to the same extent as if it had been done by his previous authority. But in order to a ratification, a full knowledge of all the facts and circumstances attending the transaction is essential. *Owings* v. *Hull*, 9 *Pet.* 608; *Pittsburg and Steubenville R. R. Co.* v. *Gazzam*, 32 *Penna. St. R.* 340; *Nixon* v. *Palmer*, 4 *Seld.* 398.

Of all these transactions, the defendant was, at the time of their occurrence, entirely ignorant. They first came to his knowledge after the notes were put in the hands of the plaintiff's attorney for collection. He immediately thereupon disavowed the act of the wife, and denied his liability, and by his attorney gave notice to the plaintiff's attorney that the notes would be contested. But it is said that notwith-

standing such disavowal, he ratified the act because he did not voluntarily offer to repay the money his wife received of the proceeds of the notes. In that view I cannot concur. Accepting and retaining the benefits obtained directly under an unauthorized contract of the agent, with full knowledge of all the circumstances, may well be held to be a ratification of the contract. But the facts do not bring this case within that principle.

The notes were not discounted for the joint benefit of John R. Holmes and the defendant. They were discounted solely for the benefit of John R. Holmes, and it was so understood by the parties at the time.

The proceeds were considered to be, and were held for, his sole benefit. The money received by Mrs. Grover out of such proceeds, was received by her, not as having a joint interest in the discount of the note, but in payment of a precedent debt due from John R. Holmes, contracted without the defendant's knowledge. It was not realized to the defendant by virtue of the unauthorized act of the agent, but was received by the voluntary appropriation of the person for whose benefit the notes were discounted, in satisfaction of a precedent debt. The case of *Culver* v. *Ashley*, 19 *Pick.* 300, which was much relied on by the plaintiff's counsel, does not conflict with this view. In that case, the defendant had himself executed the agreement of submission, and had accepted the property which was awarded to him by the arbitrators, with full knowledge of the contents of the award, and he then sought to avoid the charges and duties imposed upon him by the award, because of the arbitrators having exceeded the powers given to them by the submission. The ratification by him was complete, and the effort was to avoid its effect by proof that these acts were done by him in ignorance of his rights. It was a question of his right to repudiate, and it was held that he could not repudiate his ratification without restoring the plaintiff to as good a situation as he was in when the award was made. The views expressed in this opinion are not at variance with that case.

Gulick & Holmes v. Grover.    Holmes v. the same.

When the facts are undisputed, the question whether an agent has the requisite authority to bind his principal, is a question of law for the court, whether such authority is sought to be sustained by a previous authorization or by subsequent ratification. Under the admitted or uncontroverted facts in these cases, the judge properly instructed the jury that the plaintiffs could not recover on these notes.

The judgment must be affirmed.

*For affirmance*—The CHANCELLOR, BEASLEY, C. J., ELMER, BEDLE DALRIMPLE, WOODHULL, DEPUE, KENNEDY. 8.

*For reversal*—OGDEN. 1.