AMHERST W. BELCHER, DEFENDANT IN ERROR, v. THE MANCHESTER BUILDING AND LOAN ASSOCIATION, PLAINTIFF IN ERROR.

Submitted March 25, 1907—Decided June 17, 1907.

1. (*a* and *b*) The continued possession of securities by an agent who was empowered to make an investment is not, when such possession is plainly consistent with the original authority, to be deemed evidence of a further authority to receive payments of principal and interest on account of such investment.

(*c*) When the facts are undisputed, the question whether the agent has the requisite authority to bind the principal in the receiving of moneys or the endorsing of checks is one for the court to determine.

(*d*) The ratification of acts will not be inferred until it be shown that the principal has full knowledge of the breach of duty on the part of his representative and then continues to be inactive.

2. When the facts are not in dispute, and the inferences from them not in doubt, the question at issue is one of law, and the control or direction of a verdict is not erroneous.

---

On writ of error to the Passaic Circuit Court.

This was an action upon contract brought in the Passaic Circuit Court by the defendant in error (plaintiff below) against the plaintiff in error (defendant below).

The declaration contained the common counts, and annexed

thereto was a notice, in substance, that "this action is brought to recover the amount due to the plaintiff from the defendant for the value of twenty shares of the stock of the defendant corporation, belonging to the plaintiff, and which the defendant has wrongfully refused to pay to the plaintiff, $800 of such value having been unlawfully withdrawn from the said shares by the defendant about March 26th, 1900, and $993.94, the residue of such value, having been unlawfully withdrawn, as aforesaid, about November 15th, 1902, and the said shares of stock thereupon canceled."

The defendant filed a plea of the general issue.

The action came on for trial before a Circuit judge and a jury, and the evidence showed the matters following:

The plaintiff, a resident of Kingston, New York, became, in January of the year 1896, a member of the defendant association to the extent of twenty shares. The plaintiff had requested his brother, William H. Belcher, to make this investment for him. The brother was, at the time and thereafter, president of the association, but the plaintiff was not influenced by that fact (if he was aware of it), and did not deal with his brother in his official capacity.

An account was opened with the plaintiff in the association's ledger, and a pass-book, No. 449, was made out in his name. The pass-book was handed to the brother, and the plaintiff permitted him thereafter to retain it, and never asked for it or for any other papers. Apart from the book, it did not appear that there was any certificate of ownership of the shares. The pass-book was not produced at the trial, having been destroyed in the great fire of 1902, but it was intended to show, and did show, the number of shares held by the plaintiff, the payments made thereon in virtue of his membership, and what he was entitled to in respect of the shares.

The plaintiff gave his brother different sums at different times for the purpose of paying the dues upon the shares, and continued so to do until some time in the year 1902. After this he supposed that the interest of other investments, made or to be made for him by his brother, was sufficient for such

dues, and was applied thereto. Under this supposition he rested until August, in the year 1905, and did not at any time, personally, withdraw any part of the value of his shares, or receive any part thereof by way of loan.

The disappearance of William H. Belcher from the city of Paterson about the first of August, 1905, led the plaintiff to inquire about his shares in the association. He then learned the situation as revealed by the association's books, and by it set up, to wit, that, except during a period of three months, the plaintiff's dues had been regularly paid from the time of the subscription until June, in the year 1902, at which time the value of the shares, subject to a loan, was $1,845.60. In the month of July, 1902, the ledger account with the plaintiff was closed and marked "Withdrawn, July, 1902," and subsequently, "ck. [check] No. 1927." In March of the year 1900 it appeared that the association had drawn its check, No. 1442, for the payment of $800 "to the order of A. W. Belcher," and this was paid at the bank, with the subsequent acquiescence of the association, upon the endorsement "A. W. Belcher, W. H. Belcher, Atty.," and in November of the year 1902 it further appeared that the association had drawn its check, No. 1927, for the payment of $993.94 "to the order of A. W. Belcher," and this was paid by the bank, with a like acquiescence, upon the endorsements "A. W. Belcher, W. H. Belcher, Atty.; W. H. Belcher."

At the respective times when the checks were drawn the plaintiff's contract warranted the withdrawal of the sums specified in the checks—the first as a loan, the second in extinguishment of the shares. The directions for the withdrawing of the moneys and the issuing of the checks were given by W. H. Belcher, solely, he having possession of the passbook until its destruction or surrender. The plaintiff denied that he had given to his brother any power or authority to withdraw any moneys due upon the shares, or to endorse the checks.

The plaintiff made a demand upon the association, before action brought, for the value of the shares. This was admitted.

At the close of the testimony, the counsel of the association contended that it was its right to go to the jury on the question whether or not, from all the circumstances of the case, there was actual authority given to W. H. Belcher to withdraw the plaintiff's money. This contention was denied by the trial judge, and an exception was sealed. The counsel of the plaintiff then moved for the direction of a verdict in his favor, and, upon consideration, the judge allowed the motion. To this ruling an exception was also prayed and sealed.

In accordance with the direction of the court, a verdict was found for the plaintiff, and judgment was entered thereon in the Circuit Court.

Whereupon the defendant below sued out a writ of error, and assigns for error the adverse rulings of the court above mentioned.

For the plaintiff in error, *Jacob Willard De Yoe* and *Griggs & Harding*.

*First.* The court erred in refusing to permit the jury to consider whether William H. Belcher was the agent of the plaintiff below, with authority to withdraw the sums of $800 and $993.94, in the manner and form in which they were drawn.

(*a*) There was evidence tending to prove that the plaintiff had in fact given such authority.

(*b*) It was for the jury to say whether an apparent authority for the purpose aforesaid had not been given to W. H. Belcher.

(*c*) It was not important that the moneys were withdrawn in the form of two checks made payable to A. W. Belcher and endorsed by W. H. Belcher as his attorney.

(*d*) There was some evidence of ratification by the plaintiff.

*Second.* The court erred in directing a verdict for the plaintiff.

*Contra, John H. Reynolds* and *H. H. Fleming* (of the New York bar).

The opinion of the court (the foregoing statement having been made) was delivered by

GREEN, J. This action was brought to recover the withdrawal value of twenty shares in the defendant association, which was incorporated under "An act to encourage the establishment of mutual loan, homestead and building associations." *Gen. Stat., p.* 331. The defence interposed was that the money had already been withdrawn by the plaintiff's agent in that behalf.

*First.* The trial court refused to permit the jury to determine whether William H. Belcher had authority, as agent, to withdraw the value of the plaintiff's shares in the manner and form in which it was drawn.

A universal agency, being a thing extremely rare, may be dismissed from present consideration, and agency may be said to be either general or special. The former relation arises where one is authorized to transact all business of another of a particular kind; the latter, where one is authorized to act in a single transaction only. See *Mech. Ag.,* §§ 1, 283; *Ev. Pr. & A. (Ewell's ed.)* *2, *101, 102; *Story Ag. (8th ed.),* § 17. There was some evidence in the case in hand, uncontradicted, which showed that William H. Belcher was a general agent of the plaintiff in making investments in this state.

(*a* and *b*) Laying hold of this, the counsel of the defendant insists that the plaintiff should be bound, with respect to third parties (such as the defendant), not only to the extent of the actual authority, but also to the extent of the apparent authority with which he had clothed his brother, if the latter authority were greater than the former. See *Story Ag.,* §§ 73, 126, 127, 443; *Mech. Ag.,* §§ 282, 283; *Law* v. *Stokes* (1867), 3 *Vroom* 249, 251, 252.

Then it is further insisted that one instance of the application of the principle just stated is where an agent has been empowered to make an investment, and is permitted to continue in possession of the securities. This, it is said, warrants the inference of fact, that such agent is authorized

to receive payments of the principal and interest, and *Haines* v. *Pohlman* (1874), 10 *C. E. Gr.* 179, 182, 183, is cited.

To this it may be answered that the purpose of the possession of securities is a legitimate inquiry (*Lawson* v. *Nicholson* (1894), 7 *Dick. Ch. Rep.* 821, 824), and that, in the present case, the continued possession of the pass-book was consistent with the original authority to make an investment, because, in discharging this agency, the periodical payment of dues was necessary, and, from the proven nature of the pass-book, the entry therein of such payments, as and when made, was for the protection and benefit of the plaintiff. In such case we think that the continued possession of the pass-book was not evidence of an apparent authority to receive payments of the principal and interest of the investment.

(*c*) It is next urged that the withdrawing of the two sums of money, by checks, payable to the order of the plaintiff, and endorsed by William H. Belcher as attorney, was and is a factor of no importance. We must be permitted to think otherwise.

In *Gulick* v. *Grover* and *Holmes* v. *Grover* (1868), 4 *Vroom* 463, this court considered the liability of the defendant (at *p.* 465) upon "notes signed in the defendant's name, by his wife, without his knowledge or consent, and loaned by her, without the husband's knowledge, to Holmes, as a means of raising money for his benefit." The testimony showed a general authority in the wife to sign notes in the husband's name, in the course of his usual business (at *p.* 466), but no further. Thereupon, it was held (at *p.* 473) that, where the facts are undisputed, the question, whether the agent has the requisite authority to bind his principal, is for the court. In the present case, the evidence showed no authority given by the plaintiff to his brother to effect loans with the association or to withdraw moneys therefrom. The making of the checks payable to the order of the plaintiff himself was a recognition by the association of the lack of authority in W. H. Belcher. The acts of both

parties were in accord, and the evidence suggests no dispute. The decision in the Grover cases is therefore applicable and controlling.

If the question be narrowed to the authority to endorse the two checks, the result must be the same. The agency in such case would be special, and must be shown. See *Flax and Hemp Co.* v. *Ballentine* (1838), 1 *Harr.* 454; *Agricultural Insurance Co.* v. *Fritz* (1897), 32 *Vroom* 211, 217. There was no such proof.

(*d*) It is then said that there was evidence for the jury of a ratification by the plaintiff of the withdrawals by his brother, in that the former never intimated that these had been made without authority, until about five or, at least, three years thereafter. To this it is a sufficient reply that William H. Belcher appears to have been a man of some prominence and held in general esteem; and that it was neither astonishing nor unlawful in the plaintiff that he should rest in the belief of the propriety of such a brother's dealings. As soon as the brother disappeared, and cause for disquietude arose, the plaintiff was prompt in making inquiry, and then in disavowing his brother's authority. The ratification of acts will not be inferred until the principal has full knowledge of the breach of duty on the part of his representative, and then continues to be inactive. See *Gulick* v. *Grover* and *Holmes* v. *Grover* (1868), 4 *Vroom* 463, 471; *Dowden* v. *Cryder* (1893), 26 *Id.* 329, 333.

*Second.* The trial court directed a verdict for the plaintiff. It being already found that the facts touching the authority of the agent were not in dispute, it is almost superfluous now to attempt to justify the direction.

When the facts are not in dispute, and the inferences from them are not in doubt, the question at issue is one of law for the court, and the direction of a verdict is not erroneous. See *Gulick* v. *Grover* and *Holmes* v. *Grover* (1868), 4 *Vroom* 463, 473; *Amer. D. & I. Co.* v. *Trustees of Public Schools* (1885), 12 *Stew. Eq.* 409, 449; *McCormack* v.

*Standard Oil Co.* (1897), 31 *Vroom* 243, 245, 246; *American Saw Co.* v. *First National Bank* (1897), *Id.* 417, 427; *Strauss* v. *American Talcum Co.* (1899), 34 *Id.* 613, 615. Compare, in case of a nonsuit, *Furniture Company* v. *Board of Education* (1896), 29 *Id.* 646, 648.

The judgment of the Passaic Circuit Court must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.   15.

*For reversal*—None.