**ALUMINUM COMPANY OF AMERICA,** a Pennsylvania corporation, Plaintiff,

v.

**PREFERRED METAL PRODUCTS, a** New Jersey corporation,

and

**Benjamin Hadjuk and Genevieve Hadjuk,** Defendants.

**Civ. A. No. 467-63.**

United States District Court
D. New Jersey.
April 9, 1965.

Melnik, Tarter & Muller, by Albert B. Melnik, Camden, N. J., Adelman & Lavine, Philadelphia, Pa., of counsel, for plaintiff.

Frank E. Vittori, Camden, N. J., for defendant, Genevieve Hadjuk.

COHEN, District Judge:

This is a motion made by defendant, Genevieve Hadjuk, (defendant) for a judgment notwithstanding a jury verdict, or in the alternative for a new trial, pursuant to Rule 50 F.R.Civ.P., 28 U. S.C.A., the procedural elements having been met both during and after trial.

This action is based upon diversity of citizenship, and is founded upon an alleged written guaranty made by defendant to plaintiff, Aluminum Company of America (plaintiff), guarantying payment of an indebtedness of Preferred Metal Products (the corporation), originally the primary defendant in the action, against whom a judgment in the amount of $17,000.00 was entered by consent. Benjamin Hadjuk, the husband of defendant, was also a defendant in this action originally, and likewise entered into a stipulation with plaintiff for the entry of judgment against him in the amount of $17,000.00. When both co-defendants, the corporation and Benjamin Hadjuk, defaulted on the terms of stipulation for payment of the consent judgment, plaintiff reactivated the case and proceeded to trial against defendant on an alleged guaranty.

The complaint stated that defendant executed a written guaranty to plaintiff dated March 19, 1959. The pretrial order expanded the plaintiff's allegation to include that the guaranty was executed by her, "or her authorized agent."

The plaintiff's evidence consisted of the testimony of four witnesses and certain documentary exhibits. The sole triable issue was whether Benjamin Hadjuk, husband of defendant, was her agent, with the required authority to affix her signature to the instrument of the guaranty in question, and did so.

In order is an analysis of the testimony and the application of the proper legal principles thereto. The first two witnesses produced by plaintiff were Mr. Dow and Mr. Clark, the sales engineer and district credit manager, respectively, of plaintiff. They testified of negotiations for materials with Benjamin Hadjuk for the creation of a line of credit for the corporation, owned and controlled by him. Both admitted that they neither knew nor dealt with defendant. There was nothing in their testimony pertaining to the question of the affixing of the signature of defendant to the document P–2.

The third witness was Benjamin Hadjuk, and as appears in retrospect, the principal witness for plaintiff's case. His testimony is considered fully hereafter.

The fourth witness produced by plaintiff was the defendant herself, as an adverse witness. Her testimony was clear and cogent in statement, that she denied having signed the written instrument in question; that she had not authorized anyone to affix her signature thereto, including her husband, Benjamin; and that when plaintiff sought to connect her with the guaranty instrument some 3 years after its date in 1961, she engaged counsel and denied by letter any connection with the matter in question. Further, defendant denied that the signature on P–2 was hers. She did remark, however, that the signature in question did look like hers, but that she was certain she had never in fact signed the guaranty.

P–2, the crucial document, when marked for identification, was shown to Benjamin Hadjuk, but he could not identify the name "Genevieve Hadjuk", as being her signature, nor say whether he signed it on her behalf. The most that he could say was that he couldn't remember who may have signed it and whether he had or had not.[1]

Over objection at the end of plaintiff's case, P–2 was offered and introduced into evidence.

Despite the weakness inherent in the use of hostile witnesses to establish plaintiff's claim, decision was reserved pursuant to Rule 50, ante, by the Court on defendant's motion for a directed verdict, and the matter was submitted to the jury. A verdict in the stipulated sum of $17,000.00 was rendered against the defendant. She now renews her motion for a directed verdict although characterized in practice as a motion for judgment notwithstanding the verdict.

The defendant's post-verdict motion focuses the Court's attention once again upon whether the evidence at the close of the entire case called for a determination as a matter of law that the testimony and exhibits offered in support of plaintiff's claim were legally sufficient for submission to the jury for its verdict. Such reservation of decision, when close questions may at the moment of trial perplex a trial court, has been considered a cautious and timesaving technique, avoiding retrial where the motion has been granted after verdict and reversed on appeal. Talbot-Windsor Corp. v. Miller, 309 F.2d 68, 69 (1 Cir. 1962); Green v. Reynolds Metals Co., 328 F.2d 372 (5 Cir. 1964); Miller v. Pennsylvania R. Co., 161 F.Supp. 633 (D.C.D.C.1958); Lindeman v. Textron, Inc., 229 F.2d 273, 276 (2 Cir. 1956); Barnett v. Terminal R. Ass'n., 200 F.2d 893, 896 (8 Cir. 1953) cert. den. 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377 (1953).

■ The post-verdict relief sought has afforded the Court ample opportunity to view, in retrospect, the quantitative and qualitative sufficiency in law of the evidence. It is the legal sufficiency of substantial evidence which must be gauged. Unlike the judicial assessment at the close of plaintiff's case, when all favorable inferences flowing from its

---

1. A transcript of the testimony of Benjamin Hadjuk was made available to the Court and counsel on April 1, 1965. See transcript of his testimony, pp. 22–23.

proofs are accepted in support of its claim, at the close of all proof in the controversy, the evidence must be legally sufficient to meet the civil test of preponderance in order to sustain submission of plaintiff's claim to the jury. This is not to say that the Court acts as a jury, in weighing such evidence, or tests the credibility of witnesses, in order to determine wherein the preponderance of evidence lies. Anderson v. Hudspeth Pine, Inc., 299 F.2d 874 (10 Cir. 1962). For once it is determined that the case presents such a state of evidence that the jury might select certain portions of all the proof which would substantially support plaintiff's claims, a directed verdict would be improper. And this is so, even though the Court may believe that the weight of the evidence is on the other side. Crosby v. Meredith, 300 F.2d 323 (4 Cir. 1962); Kaufman v. Atlantic Greyhound Corp., 41 F.Supp. 252 (D.C.Va. 1941).

■ Preponderance of evidence, of course, involves probabilities, rather than mere possibilities. If two possibilities can be inferred from the evidence, neither one can be said to have been proved by the preponderance of the evidence required to sustain the necessary burden of proof. McNamara v. U. S., 199 F.Supp. 879 (D.C.D.C.1961). So that if the evidence offered goes no further than to give equal support to two inconsistent inferences, judgment must go against the party upon whom rests the burden of proof. Sherman v. Lawless, 298 F.2d 899 (8 Cir. 1962); Ries v. Sanders, 34 F.R.D. 468 (D.C.Miss.1964). Lacking substantial evidence upon which might be based a reasonable probability to make for preponderance of proof, an area of speculation and conjecture improperly rears its head. O'Connor v. Pennsylvania R. Co., 308 F.2d 911, 915 (2 Cir. 1962); Commercial Standard Ins. Co. v. Feaster Trucking Service, 259 F.2d 210 (10 Cir. 1958); Delaware Val. Marine Supply Co. v. Amer. Tobacco Co., 184 F.Supp. 440 (E.D.Pa.1960). Generally, where testimony is fairly susceptible of divergent inferences, it is axiomatic that such evidence should be submitted to a jury for its resolution. More particularly so, if Benjamin Hadjuk's evasive and conflicting testimony existed in a suit wherein his liability was in question, clearly the traditional function of a jury in assessing credibility would be proper for resolution of such issue. However, such is not the instant case nor its issue. Here, we are confronted solely with the issue of the liability, if any, of defendant Genevieve Hadjuk.

Such then are the general rules governing this motion, and against which the proof must be tested.

■ Succinctly, plaintiff sought to prove that defendant was liable upon a written instrument upon which her name appeared as a signatory, to answer for the debt of another. There was an unequivocable denial of signature by defendant, and an uncontroverted affirmative statement by her that she gave no one, including her husband, Benjamin Hadjuk, authority to affix her signature to pledge her credit for his corporation, or otherwise. There was no evidence of defendant holding Benjamin Hadjuk out to creditors as her agent for the corporation or otherwise; she had no ownership or interest in it whatsoever. Nor was there any prior course of conduct or dealings between the plaintiff and defendant from which reasonable inferences could be deduced of apparent authority of another to act on her behalf. The most that the plaintiff has been able to show is Benjamin Hadjuk's one time vague belief of authority and his uncertainty of the signature on P–2. His self-serving evasiveness, his uncertainty, his reluctance to make direct answers, his convenient state of amnesia, may demonstrate the well known horns of a dilemma. Was he concerned about the possibility of a charge of fraud being leveled against him for his submission to plaintiff of a forged guaranty, or, was he seeking to protect his wife, the only solvent member

of his family, from the entry of a judgment against her? This observation does not lack support from a view of his testimony.

Such is the proof upon which plaintiff relies to meet the test of substantial evidence in support of its claim. All that the plaintiff has is a document bearing the name of the defendant and no affirmative proof of signature with or without authority. The plaintiff's proofs are abysmally lacking in authentication of the execution of P–2, which was admitted on the conflicting deposition and testimony of Benjamin Hadjuk.[2] This is not the kind of evidence which meets the test of substantial or affirmative preponderance of proof, in order to fix liability on another who is connected with the transaction in question, only in that her name was used in some manner by "someone" without some affirmative showing of authority.

Both parties stress the issue of agency. Familiar principles of the law of agency present no confounding mystique, nor require dissertation. The Court is in full accord with these established principles of frequent statement in decision and text. It is the application of these accepted legal concepts to the proofs offered in this case that gives the Court pause. Plaintiff must show affirmative evidence of agency between Benjamin Hadjuk and defendant, in light of her denial and the absence of any conduct on her part upon which plaintiff reasonably relied. Nor was any issue of ratification presented. There is no proof of her knowledge of the questioned document. When liability was first sought to be charged against her, she engaged counsel to dispute the claim. In face of the defendant's denial of agency, any proof thereof must come from the lips of Benjamin Hadjuk. If there was agency, then the extent of such agency must come from him also. And if such agency, as well as authority, exercise in fact of such authority must appear from his testimony. The state of the evidence in the record engenders no more than a possibility as distinguished from a probability on these three crucial issues. So that absent a probability of agency, coupled with a probability of the exercise of proper authority, execution of such authority in the pledge of the defendant's name and credit must be speculated. Belcher v. Manchester Bldg. & Loan Ass'n, 74 N.J.L. 833, 67 A. 399 (E. & A.1907); Gulick v. Grover & Holmes, 33 N.J.L. 463, 465 (E. & A.1868).

Assuming a view most beneficial to plaintiff on a motion for directed verdict, only the merest scintilla of evidence appears of any agency, which was not in fact exercised, for there was no affirmative showing of the execution of the purported instrument of guaranty. Only the possibility of its execution by him, or anyone else, is the most that has been made to appear.

A judicial screening of the evidence, after verdict, in assessment of its legally probative substantiality, and whether a jury choice of reasonable probabilities was presented, now convinces the Court that the verdict should be directed for the defendant. What appeared as hairline probative evidence in support of plaintiff's claim during the momentum of trial diminishes into a repose short of carrying the burden of proof essential to an affirmative claim, when exposed to unharried analysis of the evidence in light of the legal tests to be employed for a directed verdict, or judgment n. o. v., on post-verdict scrutiny. Having the burden of proof meaningfully precludes mere possibility and speculation or conjecture. So that where a party having such burden is confronted with the denial of one's allegations by his witnesses, absent other substantial support of his affirmative claim, even though he may weather a motion for directed verdict at trial and succeed in convincing a jury of the postulated truth of his allegations, a verdict

2. Transcript of Benjamin Hadjuk's testimony, pp. 19–28.

should and must be directed against him on post-verdict motion. Dyer v. Mac-Dougall, 201 F.2d 265 (2 Cir. 1952). Such is this case. And such is the judgment of this court as a matter of law.

Accordingly, the verdict of the jury and the judgment entered thereon are set aside and judgment shall be entered in favor of defendant. The alternate motion of defendant for a new trial is rendered moot and shall be dismissed. Counsel for defendant may submit an appropriate order.

