**DYER v. MacDOUGALL et al.**

No. 17, Docket 22357.

United States Court of Appeals
Second Circuit.

Argued Oct. 8, 1952.

Decided Dec. 31, 1952.

See, also, 109 F.Supp. 444.

266

J. Raymond Dyer, pro se.

Charles H. Tuttle, Breed, Abbott & Morgan, New York City, Lloyd V. Almirall, Stuart H. Johnson, Jr., New York City, of counsel, for appellees.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on appeal by the plaintiff from a judgment summarily dismissing the third and fourth counts of a complaint for libel and slander. Two questions arise: (1), whether we have jurisdiction over the appeal; (2), whether the defendants showed that there was no "genuine issue" to try within the meaning of Rule 56(c) Fed.Rules Civ.Proc. 28 U.S.C. We may start with the amended complaint, which was filed on November 24, 1950. It was in four counts, of which the first alleged that the defendant, Albert E. MacDougall, had said of the plaintiff at a directors' meeting of the "Queensboro Corporation": "You are stabbing me in the back." The second count alleged that MacDougall had written a letter to one, Dorothy Russell Hope, the plaintiff's wife's sister, containing the words: "He"—the plaintiff—"has made false statements to my clients in Philadelphia," and "He has presented bills for work he has not done." The third count alleged that MacDougall had said to a lawyer, named Almirall, that a letter sent out by the plaintiff to the shareholders of the "Queensboro Corporation" was "a blackmailing letter." The fourth count alleged that MacDougall's wife, as MacDougall's agent, had said to Mrs. Hope that the plaintiff had "written and sent out a blackmailing letter." On December 26, 1950, the defendants, before answer, moved for judgment summarily dismissing the second, third and fourth counts, supporting their motion by affidavits of MacDougall, MacDougall's wife, and Almirall, and by a deposition of Mrs. Hope, which the plaintiff himself had already taken. Each of the defendants unequivocally denied the utterance of the slanders attributed to him or her; and Almirall and Mrs. Hope denied that he or she had heard the slanders uttered. On his part the plaintiff replied with several affidavits of his own, the contents of all of which would, however, be inadmissible as evidence at a trial upon the issue of utterance. On January 24, 1951, the defendants filed an unverified answer denying the de-

famatory utterances, and on the same day they brought on their motion for hearing before Judge Kennedy. He offered the plaintiff an opportunity to take depositions of Mr. and Mrs. MacDougall and of Almirall, and a second deposition of Mrs. Hope; and by consent the case was then adjourned to allow the plaintiff to take the depositions. However, towards the end of October 1951, he told the court that he did not wish to do so, and on December 28, 1951 (the defendants having meanwhile withdrawn their motion as to the second count), the judge decided the defendants' motion by summarily dismissing the third and fourth counts on the ground that upon the trial the plaintiff would have no evidence to offer in support of the slanders except the testimony of witnesses, all of whom would deny their utterance. On this opinion, D.C., 12 F.R.D. 357, he entered the judgment in suit on January 7, 1952, from which the plaintiff took no appeal within thirty days. However, on February 20, 1952, he wrote a letter to the judge, asking an extension under Rule 73(a) of thirty days within which to appeal; and this he followed on the 25th by a motion for a reargument, repeating his request for the extension. On March 4, 1952, the judge filed a second opinion, granting the reargument, but again deciding that counts three and four should be dismissed. D.C., 109 F.Supp. 444. However, he granted an extension of thirty days for the time to appeal, and, apparently *sua sponte*, "certified" "that I did give an express direction for the entry of judgment, and that there is no reason for delay." On March 4, 1952, the plaintiff filed a notice of appeal from the judgment.

■■ As we have said, the first question is whether we have any jurisdiction over the appeal taken. Before the amendment of Rule 54(b) an appeal would have lain from the judgment. In Collins v. Metro-Goldwyn Pictures Corporation, 2 Cir., 106 F.2d 83, we explicitly overruled Sheppy v. Stevens, 2 Cir., 200 F. 946; and in Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478, the Supreme Court decided that an appeal lay from a judgment that finally disposed of one of several "claims for relief," joined in a single action, provided that "the claims are 'entirely distinct'", 316 U.S. at page 285, 62 S.Ct. at page 1087. There can be no doubt that the "claims" pleaded in the third and fourth counts are "entirely distinct" from those in the first and second. The third count is for a slander, uttered by MacDougall to Almirall, which was different in the words used, and in time and place of utterance, from the slander alleged in the first count; and equally different from the libel alleged in the second. The fourth count is for a slander uttered by Mrs. MacDougall to Mrs. Hope that was also as different—and in the same respects—from the first and second counts. The fact that all grew out of "the plaintiff's employment by the Queensboro Corporation," does not qualify their independence of one another. The wrong in all defamation is the utterance, and each utterance upon a separate occasion is a complete wrong in itself, even though it be the repetition of an earlier utterance—which incidentally was not the case here. Woods v. Pangburn, 75 N.Y. 495; Cook v. Conners, 215 N.Y. 175, 109 N.E. 78, L.R.A. 1916A, 1074. Therefore before the amendment to Rule 54(b), the judgment of January 7, 1952, would have been immediately appealable, regardless of the continued pendency of the first and second counts; and we shall assume that the time to appeal from it would have expired, not only before March 4, 1952, but before the letter of February 25th in which the plaintiff asked for an extension. However, the action included "multiple claims": *i. e.* "more than one claim for relief"; and in such an action under the amendment to Rule 54(b) no single claim may be appealed unless the judge files the "determination" that the rule provides, which then endows it with the finality that it would have had before the Rule was amended. For this reason we held in Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, 339, that in a case of "multiple claims" the period of limitation upon the right of appeal does not begin to run until the judge makes the required "determination." It follows that March 4, 1952, the day of the "determination," was the first day on which the plaintiff could have appealed, and that the appeal was therefore taken in time.

■ The motion to dismiss will therefore be denied, which brings us to the merits. The question is whether, in view of the defendants' affidavits and Mrs. Hope's deposition, there was any "genuine issue" under Rule 56(c) as to the utterance of the slanders. The defendants had the burden of proving that there was no such issue; on the other hand, at a trial the plaintiff would have the burden of proving the utterances; and therefore, if the defendants on the motion succeeded in proving that the plaintiff would not have enough evidence to go to the jury on the issue, the judgment was right. As the plaintiff has refused to avail himself of the privilege under Rule 56(f) of examining by deposition the witnesses whom the defendants proposed to call at the trial, we must assume that what they said in their affidavits they would have repeated in their depositions; and that what they would have said in their depositions, they would say at a trial, with one possible exception, the consideration of which we will postpone for the time being. With that reserve we will therefore first discuss the judgment on the assumption that the record before us contains all the testimony that would appear at a trial in support of the slanders. We have not forgotten that the plaintiff swears that his wife told him on March 8, 1950, that Mrs. Hope had said to her on March 7, 1950, that she, Mrs. Hope, could forgive the plaintiff "everything except that letter," meaning a letter, written by the plaintiff and addressed to the shareholders of the "Queensboro Corporation," which Mrs. MacDougall according to the complaint described as a "blackmailing letter." The plaintiff did not submit his wife's affidavit that Mrs. Hope had told her what he says his wife said to him she did; but we shall assume that such an affidavit is in the record. Mrs. Hope's putative declaration to Mrs. Dyer would of course be hearsay, but the plaintiff says that it would nevertheless be competent under the exception as to "spontaneous exclamations." We cannot agree. The time of Mrs. MacDougall's statement to Mrs. Hope is not fixed except that it is said to have been between December 13th and March 7th; and, strictly, we might dispose of the point because there is no reason to say that the interval was not two months. But let us suppose that Mrs. MacDougall had called up Mrs. Hope only the day before Mrs. Hope narrated the talk to her sister. The argument must be that the emotional stress set up in Mrs. Hope's mind by Mr. MacDougall's information endured for twenty-four hours and so far suspended her ordinary powers of deliberation as to make her declaration like the ejaculation of a person injured in an accident, or suddenly faced with a vital crisis. "The utterance must have been *before there has been time to contrive and fabricate, i. e.* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." Wigmore § 1750(b). So we are to suppose that, when Mrs. Hope learned that her brother-in-law, whom incidentally she had recently "castigated," had sent out a letter that could be described as blackmailing MacDougall, it so far obsessed her deliberative faculties that, although she did not call up her sister that day, she remained unable to "contrive or fabricate" for twenty-four hours. Unless we are altogether to abandon the hearsay rule, it is difficult to imagine a situation more appropriate for its application. Finally, any declaration of Mrs. Hope would be incompetent as contradictory of her testimony, if the plaintiff should call her as his witness. It is true that Rule 43(b) makes competent inconsistent statements of a witness called by a party, if the witness is the adverse party himself, but Mrs. Hope is not a party. If the plaintiff called her and she repeated her deposition, he could not use his wife's contradictory version of the interview between her and Mrs. MacDougall.

■ Hence, if the cause went to trial, the plaintiff would have no witnesses by whom he could prove the slanders alleged in the third and fourth counts, except the two defendants, Almirall and Mrs. Hope; and they would all deny that the slanders had been uttered. On such a showing how could he escape a directed verdict? It is true that the carriage, behavior, bearing, manner and appearance of a witness—in

short, his "demeanor"—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness. This we have again and again declared, and have rested our affirmance of findings of fact of a judge, or of a jury, on the hypothesis that this part of the evidence may have turned the scale.[1] Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.

Nevertheless, although it is therefore true that in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him. This is owing to the fact that otherwise in such cases there could not be an effective appeal from the judge's disposition of a motion for a directed verdict. He, who has seen and heard the "demeanor" evidence, may have been right or wrong in thinking that it gave rational support to a verdict; yet, since that evidence has disappeared, it will be impossible for an appellate court to say which he was. Thus, he would become the final arbiter in all cases where the evidence of witnesses present in court might be determinative. We need not say that in setting aside a verdict the judge has not a broader discretion than in directing one;[2] for we have before us only the equivalent of a direction. It may be argued that such a ruling may deprive a party of a possibly rational verdict, and indeed that is theoretically true, although the occasions must be to the last degree rare in which the chance so denied is more than fanciful. Nevertheless we do not hesitate to set against the chance so lost, the protection of a review of the judge's decision.

There remains the second point which we reserved for separate discussion: *i. e.* whether by an examination in open court the plaintiff might extract from the four witnesses admissions which he would not have got on the depositions that he refused. Although this is also at best a tenuous possibility, we need not say that there could never be situations in which it might justify denying summary judgment. It might appear for example that upon a deposition a witness had been recalcitrant, or crafty, or defiant, or evasive, so that the immediate presence of a judge in a court-room was likely to make him tell more. That would be another matter; and it might be enough. But the plaintiff is in no position to invoke such a possibility for he has refused to try out these witnesses upon deposition, where he might discover whether there was any basis for supposing that awe of a judge was necessary to make them more amenable. *A priori* we will not assume that that is true. The course of procedural reform has all indeed been towards bringing witnesses before the tribunal when it is possible; but that is not so much because more testimony can be got out of them as because only so can the "demeanor" evidence be brought before the tribunal.

Judgment affirmed.

FRANK, Circuit Judge (concurring).

1. The facts here are most peculiar, unlikely to recur often: The plaintiff in his complaint asserts that defendant slandered plaintiff in the plaintiff's absence but in the presence of only two other persons. If there were a trial, plaintiff could not himself testify, for he knows of his own knowledge none of the facts necessary to support

1. Arnstein v. Porter, 2 Cir., 154 F.2d 464; Broadcast Music Inc. v. Havana Madrid Restaurant Co., 2 Cir., 175 F.2d 77; Colby v. Klune, 2 Cir., 178 F.2d 872; N. L. R. B. v. Dinion Coil Co., 201 F.2d 484.

2. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147.

his case. To prove his case, he would have to call the defendant who, in his oral testimony, would deny that he had uttered the alleged slanderous statement. For plaintiff is aware that the only two other possible witnesses he could summon would corroborate defendant; and, if he called them, he could not impeach them.

Judge HAND'S opinion states that, if defendant and the other witnesses testified, the trial court, evaluating their credibility in the light of their demeanor as witnesses, could rationally find not only that defendant's denial was false but that the opposite was true, i. e., that defendant had made the slanderous statement. Yet Judge HAND holds that a trial judge in a jury trial of such a case would be obliged not to let the jury reach a verdict for plaintiff on that rational basis. As I understand Judge HAND, he says that the result of holding otherwise would be that the trial judge's disposition of a motion for a directed verdict (or a verdict n. o. v.) could not be effectively reviewed on appeal. On that ground alone—i. e., the supposed obstacle, in a jury trial of such a case, to review of a directed verdict—Judge HAND'S opinion affirms the summary judgment for defendant here.

Since, then, the sole reason given in Judge HAND'S opinion for affirmance is something peculiar to a jury trial, I take it that, were there a jury waiver here, so that if there were a trial, it would be a judge trial, Judge HAND would hold erroneous the summary judgment here. This is a curious distinction. It would make the propriety of a summary judgment in such a case turn exclusively on whether or not the parties, if entitled to any trial, are entitled to one by jury.[1] In such a case as this, it would prevent a jury from relying on demeanor but permit a judge in a judge trial to do so (although, if he did, his decision, in so far as he relied on demeanor, would not ordinarily be reviewable).

I agree with Judge HAND that (at least in some cases)[2] a trial judge should be allowed to find that a plaintiff has discharged his burden of proof when the judge disbelieves oral testimony all of which is adverse to plaintiff, solely because of the trial court's reaction to the witnesses' demeanor and there is no evidence for plaintiff except that "demeanor evidence."[3] But I think it most unfortunate to hold that this rule applies in judge trials and not in jury trials. Such a distinction should be avoided if possible.

But I read Judge HAND'S opinion as saying it is unavoidable for the following reason: If, in a jury trial, the jury, solely on the basis of its evaluation of credibility as affected by the jury's reaction to a witness' demeanor, were allowed to bring in a plaintiff's verdict, then necessarily (says Judge HAND) the judge in that same trial could also properly take into account demeanor in passing on the defendant's motion for a directed verdict; but, were that true, the judge's action on the motion could never be reviewed, as demeanor cannot appear in the printed record on appeal.[4]

---

1. That is, whether or not they both have failed to demand a jury, or whether or not plaintiff seeks relief (e. g., specific performance) precluding a jury trial.

2. This parenthetical qualification I shall explain later.

3. We have already held that, solely on the basis of a trial judge's disbelief in the oral testimony of a plaintiff's witness—a disbelief resulting entirely from the witness' demeanor—the judge may decide for the defendant. Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 2 Cir., 175 F.2d 77. There, however, the disbelief in this testimony—uncontradicted by anything other than the witnesses' demeanor—meant that plaintiff had not discharged his burden of proof. In the in-

stant case, the question is whether plaintiff can discharge his burden of proof where the judge disbelieves the testimony of witnesses all of whom testified against him.

4. This reasoning, spelled out more in detail, is as follows:

(a) If a jury, solely on the basis of its evaluation of credibility as affected by its reaction to a witness' demeanor in a case like this, could properly bring in a verdict for the plaintiff, then (says Judge HAND) necessarily a trial judge could also properly take into account credibility in the light of demeanor, and solely because of resulting evaluation of the witnesses' reliability, could grant or deny the defendant's motion for a directed verdict.

I cannot accept that distinction for the following reasons: Judge HAND argues from the alleged unreviewability of a directed verdict in a case like this, if demeanor were a factor. But this argument cuts too far. For, if Judge HAND is correct, the same difficulty will attend the review of any directed verdict in any case where any important evidence consists of oral testimony. In any such case, one could say, as Judge HAND says here: If the jury (should the case go to the jury) could rely on "demeanor evidence," then necessarily the trial judge could do likewise, on a motion for a directed verdict; and, if he could, no directed verdict would be reviewable when important testimony is oral. But this is exactly not the rule in the federal courts: The well-settled rule is that, in passing on a motion for a directed verdict, the trial judge always must utterly disregard his own views of witnesses' credibility, and therefore of their demeanor; that he believes or disbelieves some of the testimony is irrelevant. When asked to direct a verdict for the defendant, the judge must assume that, if he lets the case go to the jury, the jurymen will believe all evidence—including "demeanor evidence"—favorable to the plaintiff. In other words, the judge must not deprive plaintiff of any advantage that plaintiff might derive from having the jury pass upon the oral testimony. Indeed, the important difference between a trial judge's power on a motion for a new trial and on a motion for a directed verdict is precisely that on a new-trial motion he may base his action on his belief or disbelief in some of the witnesses, while on a directed-verdict motion he may not.

Lurton, J., in a much quoted opinion,[5] expressed the difference thus: "We do not think * * * that it is a proper test of whether the court should direct a verdict, that the court, on weighing the evidence, would, upon motion, grant a new trial. * * * In passing upon such motions [for new trial] he is necessarily required to weigh the evidence * * *. But, in passing upon a motion to direct a verdict, his functions are altogether different. In the latter case we think he cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus."

Taft, J., held similarly in Felton v. Spiro, 6 Cir., 78 F. 576, 582–583. The cases in accord are legion. They are excellently discussed by Judge Parker in Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352–355 and by Judge Sibley in Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498, 499–500.

In Brady v. Southern Ry. Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239, the Court said: "When the evidence is such that *without weighing the credibility of the witnesses* there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict." (Emphasis added.) As Moore puts it, a motion for new trial may invoke "the exercise of the trial court's discretion, such as that the verdict is inadequate or excessive, or that the verdict is against the weight of the

---

(b) But (says Judge HAND) if the trial judge could thus consider demeanor, then in no case where there was oral testimony could the grant or denial of a directed verdict motion ever be reviewed and reversed, because the printed record before the upper court necessarily omits demeanor.

(c) Since, however, such directed-verdict orders can and should be reviewable, this follows according to Judge HAND:

(1) The jury in a case like this may not properly return a plaintiff's verdict on the sole basis of "demeanor evidence."

(2) Therefore in such a case, on defendant's motion for a directed verdict, the trial judge must disregard the possibility that, were the case allowed to go to the jury, it might decide for plaintiff on the sole basis of "demeanor evidence."

5. Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 6 Cir., 74 F. 463, 477.

evidence. In reference to this latter matter this function of the motion for a new trial must be sharply distinguished from the motion for a directed verdict."[6] A "verdict may be set aside as contrary to the preponderance of the evidence, although a directed verdict is not justified."[7]

On a motion for new trial, the judge acts "as the thirteenth juror",[8] *i. e.,* he evaluates the credibility of the orally-testifying witnesses and therefore their demeanor. But on a motion for a directed verdict he does not. The rule that a trial judge may legitimately consider demeanor in ordering new trials means that his new-trial orders are seldom reviewable; on the other hand, the rule that he may not legitimately consider demeanor in considering directed verdict motions means that his orders on such motions are readily reviewable. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147.

Frequently this sort of case arises: The defendant urges his motion for a directed verdict on the ground that, although there is oral testimony, the record contains no testimony (or other evidence) from which any rational inference can be drawn for the existence of a fact indispensable to plaintiff's case. If the trial judge, then, directs a defendant's verdict,[9] the upper court, on appeal, in testing the propriety of his direction, adopts the postulate that the trial judge assumed that the jury, were it allowed to render a verdict, would regard the oral testimony—and therefore the witnesses' demeanor—in a manner most favorable to plaintiff. The upper court makes the same assumption; as a consequence, the trial judge's attitude towards that demeanor is not a factor on such an appeal, and so constitutes no obstacle to review.

If I am correct, there is no foundation for Judge HAND'S distinction; and, as I gather that he would have held it error to enter summary judgment for defendant here, if there had been no jury demand, he should, I think, hold that the judgment here must be reversed, despite the request for trial by jury.

2. One can imagine a case in which a man would suffer a grave injustice, if it were the invariable rule that a plaintiff can never win a case when (1) he can offer only the oral testimony of the defendant, the one available witness, which is flatly and unswervingly against the plaintiff but (2) the jury (in a jury trial) or the judge (in a judge trial) is thoroughly convinced by that witness' demeanor that he is an unmitigated liar. On that account, I would oppose such a rule.

But this is not such a case. As already noted, the facts here are most unusual: The plaintiff asserts that in his absence he was slandered by defendant in the presence of but two other persons. As this fact is denied by all three, only plaintiff's own suit serves to publicize the alleged slander. In these peculiar circumstances, the plaintiff should not have the chance at a trial to discharge his burden of proof by nothing except the trial court's disbelief in the oral testimony of witnesses all of whom will deny that the alleged slanderous statement was made. Wherefore I concur.

6. Moore, Federal Practice (2d ed.1951) § 50.02(1), p. 2317.

7. Moore, loc. cit., § 50.03, p. 2318.
   See also § 50.11, pp. 2338–2339, and Wigmore, Evidence (3d ed.) § 2494, pp. 298–299.

8. McBride v. Neal, 7 Cir., 214 F. 966, 968;
Binder v. Commercial Travellers Mutual. Acc. Ass'n, 2 Cir., 165 F.2d 896, 902; cf. General American Life Ins. Co. v. Central National Bank, 6 Cir., 136 F.2d 821, 823; Moore, loc. cit., § 50.13, p. 2347.

9. Or if he denies defendant's motion for such a verdict.