This is an appeal by the plaintiff Powell from a summary judgment rendered against him. We affirm.
The plaintiff was the author of a weekly column, "The Entertainment Preview," which appeared in a daily city newspaper, The Huntsville Times. The column contained a brief survey of and opinion upon local inns, restaurants, movies, etc. The column itself was a promotional venture which derived its revenue from local businessmen solicited by Powell, and whose names or activities would be displayed or discussed either gratuitously or for a price.
In the September 9, 1976 article there appeared a discussion in which the author referred to the defendant as "Mother Bell" and expressed his opinion that the defendant's personnel were showing "more and more rudeness" to the public. At the top of this particular article, in bold print, appeared this statement:
 Brought to you by: Alabama Bike Shop, Woody Anderson Ford, The Huntsville Hilton, Stanlieo's Sub Villas 
Marty Electric. [all in Huntsville] . . .
Following publication of this article, employees of the defendant contacted these sponsors, and after these contacts all withdrew as sponsor-advertisers. This action was based upon those contacts and withdrawals. In Count I, of his amended complaint against South Central Bell, plaintiff alleged a trespass, in that the defendant coerced these sponsors to withdraw by making statements to the effect that otherwise Bell would cause them financial harm, and that this conduct was wantonly and willfully calculated to interfere with Powell's lawful employment, trade or calling, proximately resulting in his financial loss. *Page 104 
Count II essentially contained the same allegations supplemented by a reference to the defendant's monopolistic position in the telephone communications system and thus to its position as the sole source of telephone service in Huntsville.
To this complaint as amended South Central Bell filed its motion for summary judgment, incorporating affidavits of the five sponsors in question, depositions filed in the action, the pleadings, and the answers to interrogatories propounded by the defendant. In due course the trial court granted summary judgment for the defendant. The propriety of that judgment is the issue before us. The defendant's position is that there is no factual issue remaining; the plaintiff argues that the affidavits, his response to them, and the defendant's failure to "close the facts" show that a genuine issue of fact remains,i.e., whether Bell proximately caused the cancellations by its wrongful and coercive interference.
Powell concedes in brief that one of the elements of his cause of action is the element of proximate cause. And under this requirement it would be insufficient to prove merely that Bell's employees contacted these sponsors who, additionally, were Bell customers, for in their mere inquiries to the sponsors following any such complaint, Bell's employees would only be engaging in lawful, and business-like conduct.U.S.F.G. Co. v. Millonas, 206 Ala. 147, 89 So. 732 (1921). Consequently, our focus must be upon the nature of the contacts and the inducements which led to the cancellations.
The sponsors' affidavits reveal that they were contacted by Cleve Earnest, the defendant's public relations manager in Huntsville, or by Thomas O. Young, a longtime Bell employee. In Earnest's deposition, he recalled telephoning persons at Alabama Bike Shop, Stanlieo's Restaurant, and (possibly) Marty Electric Company, all as part of his routine public relations duties. According to Earnest, his purpose was to maintain good customer relations, to correct service problems, and to determine whether there was in fact any dissatisfaction.
Young deposed that he telephoned sponsor Anderson because he knew him and he "wanted to find out . . . if we had done anything to offend him." Young acknowledged that following this contact he conversed with Powell privately concerning it while the two of them were in a local restaurant. When Powell asked him whether Bell would "do anything else" to him, Young replied that they "hadn't done anything to him so far."
All of the sponsors denied any "pressure" placed upon them by Bell to discontinue their association with Powell.
The president of Alabama Bike Shop, Herman Mullins, by affidavit stated that his name had been mentioned in the column without his consent and that upon learning of this he had told Powell to delete his name. While he recalled talking with a Bell employee about the article, he stated that no pressure of any kind was used. His termination was based upon his opinion that the Powell advertising was not suitable for his business. In fact, he stated that "[M]y decision to cancel the advertising with Dudley Powell was not connected, in any way, with my conversation with whoever called me from the telephone company."
Likewise, the manager of the Hilton Hotel, Guy Smith, denied in his affidavit that any pressure was used in connection with his decision to cancel. He stated that his decision was related solely to the cost-effectiveness of the advertising, and that "the article was not a part of my decision to terminate our sponsorship."
The owner of Marty Electric Company, Shelton E. Marty, by affidavit stated that Powell's fee was more than he wanted to spend for that type of advertising, and he denied any coercion of any kind on the part of anyone from Bell. In fact, he stated that neither the article nor the telephone company had any bearing on his decision to discontinue his sponsorship.
In his affidavit Woody Anderson stated that his company's name was used by Powell at no expense in order to help get the column started. He denied any threats or *Page 105 
pressure upon him by anyone from Bell. There was no relationship, he stated, between any conversation he had with a Bell representative and his decision to discontinue his association with the "Preview."
The owner of Stanlieo's Restaurant, Glenn Watson, by affidavit denied any pressure of any kind used by Bell. He stated:
 My decision to terminate my association with Mr. Powell's column had nothing to do with any request by South Central Bell or its people. I was never threatened, intimidated, or coerced in any manner in this matter by any South Central Bell representative. No pressure whatsoever was put on me by any telephone company employee.
 My decision to cancel the restaurant's sponsorship of the article . . . was purely a personal decision based upon my own principles and opinions.
In response to these affidavits, Powell offered his own affidavit, in part a rebuttal to each of the others offered against him.
He stated that Mullins acknowledged that he did business with Bell and, not wanting to become involved in a controversy, withdrew as a sponsor; that Shelton Marty was afraid of being implicated in a lawsuit, and did not wish to lose the work he did for Bell; that Woody Anderson Food Company does a substantial automotive repair business with Bell; that Guy Smith refused to respond to his question as to whether Hilton Hotel withdrew its sponsorship because of Bell; and that Glenn Watson stated to him, Powell, shortly after having been contacted by Bell's employee, that his contact was "part of the reason" he withdrew his sponsorship. To this Powell added that because Cleve Earnest deposed the "possibility" that he could have had a conversation with Mrs. Watson, the wife of Stanlieo's owner, the "possibility" existed that this lady "could become" a witness and corroborate Powell's allegations.
Considering the presumption which favors the movant's opponent when summary judgment is prayed, Tolbert v. Gulsby,333 So.2d 129 (Ala. 1976), nevertheless this opponent, Powell, has failed to make a genuine factual issue of either the proximate cause of the cancellations or of any unlawful or coercive force. Each of the sponsors has affirmatively negated any pressure or coercion on the part of Bell to induce such action. The only sponsor to so much as concede a relationship between the Bell contact and his decision to withdraw was Glenn Watson. That contact was "part of the reason." However, this acknowledgement of the bare contact raises a reasonable inference neither of proximate cause nor of coercion, "pressure," or any other unlawful inducement on the part of Bell, but is only a speculation. Thus it qualifies, not as a scintilla of evidence, Loveless v. Graddick, 295 Ala. 142,325 So.2d 137 (1975), but as conjecture only. Cf. Wilson v. LibertyNational Life Insurance Co., 331 So.2d 617 (Ala. 1976). As we have already noted, Glenn Watson himself denied any pressure of any kind having been exerted upon him by Bell. Cf. Willis v.Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976).
As we stated in Ray v. Midfield Park, Inc., 293 Ala. 609,611, 612, 308 So.2d 686, 687, 688 (1975):
 When a movant makes a motion for summary judgment, the burden is upon him to show that there is no genuine issue of a material fact left in the case. . . .
. . . . .
 When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of the pleadings. . . . [T]he party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden, then he is not entitled to judgment. . . .
Here the defendant-movant has negated any unlawful or coercive force brought upon the plaintiffs which proximately resulted in a discontinuance of the sponsorships. Through his supporting documents he has shown that there is no genuine issue of fact. To counter the movant, the plaintiff *Page 106 
as adverse party has offered his own affidavit in answer to the defendant's summary judgment motion. But that affidavit fails to establish that a factual issue exists as to whether or not the defendant did use any unlawful "pressure" or coercion which forced a cancellation. "Not wanting to become involved," "afraid of being implicated," "not wishing to lose work," "doing a substantial automotive repair business," or the "refusal to respond to questions," do not tend to establish that Bell made coercive representations or used pressure, subtle or otherwise, to effect cancellations. Nor do they infer that the sponsors withdrew because of Bell's inquiries. Watson's concession that Bell's contact was "part of the reason" does not infer that the contact was coercive or unlawful. And being "part of the reason" does not amount to "proximate" reason.
 Persons who perpetrate torts are, as a rule, responsible and only responsible for the proximate consequences of the wrongs they commit. In other words, unless the tort be the proximate cause of the injury complained of, there is no legal accountability. . . . Liberty National Life Insurance Company v. Weldon, 267 Ala. 171, 100 So.2d 696
(1958).
Moreover, the possibility that Mrs. Watson might be called as a witness and thus establish that she had a conversation with Earnest, a Bell employee, would not establish an inference that Bell coerced her husband into making his decision to discontinue his sponsorship of his restaurant.
This case is similar in fact and result to Dyer v.MacDougall, 201 F.2d 265 (2 Cir. 1952) in which the issue was whether summary judgment had been properly granted in a slander case. In that case the plaintiff claimed that he had been slandered in two instances, once by defamatory words spoken by the defendant to one Almirall, and once by the defendant's wife, acting at the time as defendant's agent, who allegedly uttered defamatory words about the plaintiff to one Hope. The defendant's motion for summary judgment was supported with the affidavits of the defendant, his wife, and Almirall, and with the deposition of Hope. The defendant and his wife, denied uttering any slander. Almirall and Hope denied hearing any. The plaintiff responded with affidavits of his own which, the court concluded, would be inadmissible as evidence to prove any utterance. The grant of summary judgment was affirmed because:
 [I]f the cause went to trial, the plaintiff would have no witnesses by whom he could prove the slanders alleged . . . except Almirall and Mrs. Hope; and they would all deny that the slanders had been uttered. . . .
So in this case, the only persons in a position to disclose the existence of any unlawful, forceful, coercive interference proximately causing withdrawal of sponsorship are the Bell employees and sponsors themselves, and without more, we must assume, as the court did in Dyer, that what they said in their affidavits they would have repeated by deposition or at trial.
The defendant having shown the absence of any genuine issues of material facts, the trial court's order granting summary judgment for the defendant was proper. Accordingly, that judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.