**DIATRACO CORP., Plaintiff,**

v.

**Harold M. FREEMAN and Martin Freeman, individually and d/b/a H.M. Freeman & Sons, Defendants.**

No. 81 Civ. 6683–CLB.

United States District Court, S.D. New York.

July 2, 1982.

Arthur I. Winard, New York City, for plaintiff.

Nathanson & Devack, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion fully submitted as of June 11, 1982 defendants in this diversity case seek summary judgment in their favor and also seek a judgment in their favor with respect to their counterclaim as discussed below. This case is ready for trial on the non-jury trial calendar of this Court. All pre-trial discovery is complete and efforts to adjust the matter or to have it arbitrated by an expert in the industry have been unsuccessful.

Under the peculiar circumstances outlined below, the Court finds that there is no genuine issue of material fact and that presumptions of regularity, honesty, and fair dealing, as well as consideration of the burden of proof permit this Court to dispose of this litigation on affidavits and depositions notwithstanding that the controversy pertains essentially to state of mind, intent and knowledge.

Both plaintiff and defendants are wholesale dealers in gems. While the complaint sues for conversion, breach of contract and fraud, the underlying facts supporting all three causes of action are essentially the same.

Defendants, located in Florida, received a 1.87 carat ruby from plaintiff on memorandum receipt and allegedly returned a 1.46 carat spinel. A spinel is a semi-precious stone which has a superficial visual resemblance to a ruby but does not possess the same value. Under the customs of the trade and by the agreement of the parties, a stone is "taken on memorandum" for the purpose of resale within the trade, and must either be returned or paid for upon request. The actual memorandum in this case is attached to and made a part of the defendants' notice of motion. The stone was delivered to defendants on April 16, 1981 and its return was requested in July, 1981. Defendants, as directed by plaintiff, returned the gems to Mr. Robert Evans, a representative of plaintiff at a jewelry show at the New York Hilton Hotel over the weekend of July 25, 1981.

It is uncontradicted that Evans examined each stone, checked off the receipt, and signed the receipt on behalf of plaintiff. Evans was a knowledgeable person and had the authority to act for plaintiff in receiving these goods. He was colorblind, but defendants did not know this. A claim that the ruby was a spinel of forty-one one-hundredths carat less weight was made on the following Monday.

As a matter of logic, this factual situation suggests several possibilities. They could be summarized as follows: (1) the ruby was actually returned and plaintiff thereafter substituted a spinel intending to defraud defendants by suing them; (2) the defendants received a ruby and substituted a spinel intending to defraud plaintiff by returning a spinel; (3) the stone delivered and received was at all times a spinel; (4) a third party or sinister force stole the ruby while it was in possession of the defendants and substituted a spinel; or (5) a third party or sinister force stole the ruby while it was in possession of plaintiff after its return in New York City and substituted a spinel.

There is no way in which this dispute can be resolved by choosing one of those aforementioned equally likely possibilities, without resort to alchemy. All those concerned who acted for defendants have testified or will testify that they engaged in no fraud, and did not substitute any spinel for any ruby. In this regard defendants signed a receipt for a ruby and have never denied that they received a ruby.

Plaintiff contends it gave a ruby but received a spinel in return. Against this claim stands the receipt for a ruby signed after examination of the stone by a knowledgeable and duly designated agent of the plaintiff, who probably should have been able to tell the difference between a ruby and a spinel.

Sometimes an element of doubt will creep into a situation where the Court as trier of the fact will conclude that a witness is possibly lying or even that a witness is probably lying, but this Court does not claim the positive ability to observe demeanor of witnesses and thereby conclude in any case with certainty that any are lying.

■ Assuming this Court went through the form of a trial, and dragged these participants down to the courthouse to waste half a day giving their testimony under oath, consistent with their depositions, the most that can be said is that it is possible the Court as trier of the fact might conclude that one side or the other of the case is lying. This conclusion, if reached in plaintiff's favor would have to be reached with sufficient certainty to permit plaintiff to discharge its burden of proof. To the extent that fraud is alleged rather than mistake, such evidence would have to rise to the level of being "clear and convincing".

■ The receipt signed by Mr. Evans is valid and unambiguous on its face. It carries with it the presumption of regularity. Without more, the trier of fact is entitled to assume that Evans knew what he was doing when he checked off the receipt and signed for a ruby instead of a spinel. Defendants' conduct in the matter is presumed honest, and plaintiff has the burden of proof with respect to fraud. Even with respect to negligent or innocent mistake, based on the possibility that two stones of similar size and appearance could have become mixed up at defendants' premises, plaintiff must prove by a preponderance of the credible evidence, not that they could have become so mixed up but that they actually were. Of course they could have been. But to suggest that this is in fact what happened requires speculation and guesswork of the rankest kind.

The matter at hand mirrors that found in *Dyer v. MacDougall,* 201 F.2d 265 (2d Cir. 1952), wherein the Court of Appeals affirmed the granting of summary judgment because there was no genuine issue to try within the meaning of Rule 56(c), F.R.Civ.P.

The *Dyer* plaintiff had no witnesses by whom he could prove the alleged slanders, except for the defendants who denied in all pretrial statements, and would deny at trial, that the slanders had been uttered. Against this background, Judge Learned Hand observed, *id.* at 268–69:

"On such a showing how could he escape a directed verdict? It is true that the carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. . . .

Nevertheless, although it is therefore true that in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him."

The apparently contrary holding in *Painton & Co. v. Bourns, Inc.,* 442 F.2d 216, 233 (2d Cir.1971), is not apposite to the peculiar factual circumstances present in the instant matter. *Painton,* which does not cite *Dyer,* dealt generally with claims of patent infringement, unconscionability of trade secret contractual clauses, and conflicting interpretations of an ambiguous contract by reference to preceding negotiations. In reversing and remanding the trial court's grant of partial summary judgment in favor of plaintiff, who, unlike our movants here, had the burden of persuasion, the Court of Appeals queried, *id.* at 232, 233:

"If anyone other than the parties has had the patience to read so far in this portion of the opinion, he will long since have asked himself how this controversy over the interpretation of the contract could have been thought appropriate for summary judgment. We cannot give a satisfactory answer. . . . When a contract is so ambiguous as to require resort to other evidence to ascertain its meaning

and that evidence is in conflict, the grant of summary judgment is improper."

Accordingly, and for this reason, the *Painton* Court remanded the case for trial. It added the following dicta, *id.* at 233:

"But even if the trial should turn out to be nothing more than a swearing contest, with the parties saying the same things in the witness chair they have said in affidavits, the court would have the benefit of observing their demeanor, particularly under cross-examination, and the case would come to us with factual findings on the disputed matters which are lacking in the opinion before us. We are far from saying that after an evidentiary hearing, the district court could not permissibly reach the same conclusion concerning the meaning of the contract that it did here. But, with Bourns proffering a different factual version of the negotiations, Painton must prove its case through the time-honored method of a trial."

■ This Court concludes that on the present record, which includes all of the evidence which could be offered at trial, the Court, in light of the burden of proof rules, is just as capable of deciding the issue now as it would be after it conducted a trial. Unlike *Painton* wherein it was necessary to make factual findings to clarify a confusing array of conflicting facts, this case mirrors those found in *Dyer.*

The only addition that a trial would bring is that the Court could observe the demeanor of the witnesses. It is doubtful that a finding based solely on demeanor would be sufficient to supply plaintiff that clear and convincing evidence necessary to a finding of fraud, or even that preponderance of credible evidence necessary to a finding of mistake.

To find mistake, a double inference is necessary in this case. The first inference is that defendants upon their redelivery turned over a spinel instead of a ruby. The second inference is that Evans, acting for plaintiff, made a mistake when he accepted a spinel as if it were a ruby.

Under the circumstances there is no necessity to add the burden of trial, and it is appropriate that defendants receive summary judgment in their favor because plaintiff cannot discharge its burden of proof at trial.

■ We turn now to the counterclaim. Defendants claim that this action was brought maliciously and in bad faith. As a result, they were required to retain counsel and attend depositions in New York. Their counterclaim is essentially frivolous. While, for reasons pointed out above, plaintiff could not draw the inference that "substitution of the stone could have only been made in Florida" (Aff. of Samual Khafi, President of plaintiff, ¶ 7, sworn to May 6, 1982), it is certainly one of the distinct possibilities. There is a vast difference between bringing a totally unfounded malicious lawsuit on the one hand, and having a failure of proof in support of what may be an entirely reasonable lawsuit, on the other hand. This litigation falls within the latter group.

The Clerk shall enter a judgment that all relief be denied to plaintiff on the complaint and to defendants on their counterclaim. No costs.

So ordered.