**In re The PRUDENTIAL ENERGY COMPANY, the Prudential Group, Inc., Debtors.**

**Bankruptcy No. 84 B 10632–3.**

United States Bankruptcy Court, S.D. New York.

April 11, 1986.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

On March 19, 1986, this Court entered a decision and order (the "March 19 Opinion"), 58 B.R. 857, denying confirmation of the Debtors' Second Amended Plan of Reorganization. By notice of motion served March 31, 1986, and filed on April 1, 1986, the Debtors and the Official Creditors' Committee seek an order pursuant to Rule 9023 of the Rules of Bankruptcy Procedure, which incorporates Rule 59 of the Federal Rules of Civil Procedure, granting a new hearing on confirmation. Local Rule 3(j) of the Civil Rules of the United States District Court for the Southern District of New York provides that such motions are to be decided on the papers.

In support of the motion, it is averred that the Court made two errors of fact and an error of law. The errors of fact are said to consist of:

(i) the finding that the Debtors have not met their burden under § 1129(a)(11) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(11) (1984), of showing that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization,

of the debtor or any successor to the debtor under the plan ..." and

(ii) the finding, on the basis of facts revealed at the hearing on confirmation, that the disclosure statement was inadequate.

The error of law is said to consist of the refusal to reopen the record to take in two affidavits, by the President and the former Chief Financial Officer of the Debtors, and to take the testimony of one William Brennan. These points are without merit.

## I.

The first averred error of fact is grounded on the notion that the Court must give weight to all of the testimony of Nathan Shippee, including his conclusions that the Prudential Group Incorporated ("PGI") would have a solid base of fees from providing management services, and that, "... he felt confident that the projections contained in Exhibit 'D' to the disclosure Statement [capsulized for 1986 in footnote 2 to the opinion of March 19] were attainable." (Br. p. 6). Since the Court did not give significant weight to all of Shippee's testimony, it is asserted that the Court substituted its "business judgment for that of the Debtors and the Creditors." *Ibid.*

What the Debtors and Official Creditors' Committee fail to perceive is that the Court is obligated to make an affirmative finding that further reorganization is unlikely before it can permit confirmation. They also fail to appreciate that in discharging this duty the Court should make appropriate inquiry at the hearing, and that its ruling is to be based on all the evidence, giving each segment the weight it deserves in light of, *inter alia*, the credibility of the witness. Here the Court fully accepted the evidence of income from the management of existing programs, and the testimony of prior earnings from the formation of partnerships in 1984 and before. But we did not find credible Shippee's visionary projections regarding fund raising, the prospective formation of new partnerships, and the income to be generated from that activity and the management of same, which is necessary for the reorganized Debtors to either make a profit or break even. The Court made

that assessment principally on the bases set forth in the opinion of March 19. We did not impose our business judgment. Rather, we looked at the facts to determine if the Debtors' burden had been satisfied. It was not. Most particularly, the lack of any income from these activities in 1985 and the sharp downward trend of such income from 1983 to 1985 contradicted the notion that significant income from those sources would be realized in 1986 and in the future.

Given that failure, the Court looked to see if there was other evidence, *e.g.*, the existence of investor commitments, that could support the projections. None was apparent. While the Debtors and the Committee now complain that it was unrealistic to expect such commitments early in 1986 since Shippee testified that "... typically a significant amount of fund raising, especially related to tax shelters and limited partnerships occurred near yearend ..." (Br. p. 7), the point remains that there is a dearth of facts establishing that these Debtors are not likely to be liquidated or to require further reorganization. Indeed, the statement that not all income from such activity is at year end implies that committments for some material amount of investments would now be in place if the plan was feasible. Not even in this latest motion is it so represented.

Moreover, the premise that the Court, regardless of the undisputed absence of recent prior income from such activity and the downward trend, has to accept the unsubstantiated statement of a corporate officer that he has confidence in his projections would make meaningless the requirement that the Court make a finding under § 1129(a)(11). In every case, such testimony is offered to obtain the benefits of confirmation. In effect, the Debtors and the Committee would require the Court to abdicate its statutory duty in deference to the unsupported belief of such officers.

In such cases, as here, the temptation to gloss over the unpleasant facts of the market place with optimism is to be recognized and the cold facts are to be examined. Particularly is that so where, as here, the testimony optimistically denies the adverse impact of these facts. Such examination is also appropriate—and indeed required—where that testimony and similar testimony denying the effects of pending tax legislation is given, as shown by Shippee's demeanor, with such "... arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir.1952) (per L. Hand, J.). Put simply, we found that testimony not to be credible.

Similarly incredible was Shippee's testimony of his ability to control the expenses of the reorganized Debtors. Not only was there nothing that bound him to do so by, for example, providing that another of his companies be bound by a plan provision to assume them, but this testimony, and the subsequent affidavits filed by him and William Delz regarding expenses, effectively indicated that no reliance could be placed on projections generated under their stewardship. As set forth in the March 19 opinion, to them projections can seemingly be massaged to achieve the desired result.

These facts also reflected on the disclosure statement. Nevertheless, it is claimed that error was made in ruling that the Debtors' lack of income from marketing new projects in 1985 and the downward trend in such sales should have been disclosed. Two arguments are made. First, it is averred that the Debtors stated on page 9 of the disclosure statement "that no value was being attributed by the Debtors or the Creditor's Committee to the New PGI Stock," and therefore it is unclear how the failure to reveal the facts concerning its prospects could have affected the determination by creditors and shareholders of value or affect their voting (Br. p. 8). This assertion is answered by recitation of exactly what was stated on page 9:

Neither the Debtors nor the Creditors' Committee have ascribed any particular value to the New PGI Stock which will be issued pursuant to the terms of the Plan. *The Debtors are hopeful that the New PGI Stock will have value in the*

*future based upon the anticipated activities of Reorganized PGI,* however, no representation can be made concerning the potential value, if any. (emphasis added)

The facts concerning PGI's prospects are clearly material to that statement, as well as to its income projections, and therefore should have been revealed, as was held in the March 19 Opinion.

Secondly, it is claimed that creditors could have inferred that PGI had no 1985 income from wholesaling oil and gas drilling programs. That claim is based on a statement, on page 19 of the disclosure statement, that PGI would "resume" that business. This argument ignores the fact that in the paragraph immediately following this statement is a reference to the Debtors' projections. Moreover, nowhere is the negative trend revealed, nor is any table set forth comparing the post confirmation projections with the income earned and expenses incurred during the Chapter 11 period. Furthermore, the concept of adequate information under § 1125 of the Code does not contemplate revelation by inference. Creditors are not required or expected to rely on inferences. Disclosure of material facts is what is required.

It is also argued that the drop in oil prices occurred after the disclosure statement was filed and in any event was well known. Where a material event occurs, however, it is the duty of the author of a disclosure statement to amend it. *Cf. In re Galerie des Monnaies of Geneva, Ltd.,* 55 B.R. 253, 260 (Bankr.S.D.N.Y.1985). Moreover, the particular impact of the declining oil market on these specific Debtors was hardly well known or ascertainable by the hypothetical typical investor, as defined by § 1125(a). Nor is it claimed to have been. That impact should have been set forth in an amendment.

It is further claimed that this Court ignored Shippee's testimony that the Debtors' projections accounted for the effect of proposed tax legislation but it is conceded that the effect was not spelled out. (Br. pp. 9–10). As noted, we found that testimony incredible because of the arbitrary, conclusory and off-the-cuff manner in which it was given. Moreover, the projections were prepared in November 1985 at the latest (Transcript of February 14, 1986, p. 81), before the House of Representatives passed that legislation, H.R. 3838, on December 17, 1985.

Lastly, it is claimed that there was no evidence that additional disclosure would have changed the voting, and that the determination that the disclosure statement did not contain adequate information is "incongruent" with our earlier ruling that it did. These arguments are misleading. At confirmation, the Court is directed by § 1129(a) to determine if the proponent complied with the applicable provisions of the Code and if the Plan was proposed in good faith. Where, as here, information is uncovered that reveals that the disclosure statement was materially inadequate, it cannot be found that § 1125 was complied with or that the good faith requirement was satisfied.[1] Whether or not inadequate disclosure caused the voting to be skewed is not the statutory test; compliance is. Moreover, with respect to Class 6, a change in the vote by less than 1.0% in terms of amount would have changed the outcome,[2] and required application of the cramdown provision of § 1129(b) of the Code. Under that section, the Plan could not have been confirmed since the debentureholders were not being paid in full and yet stock holders were receiving a consideration under the Plan.

## II.

As to the alleged error of law, it is claimed, relying exclusively on *DuPont v.*

---

**1.** Moreover, the present motion does not assert that it was erroneously found in the March 19 Opinion that the Debtors failed to disclose possible claims against management.

**2.** A plan is accepted by a class of creditors in a class of claims only if accepted by at least two-thirds in amount and more than one-half in number of those who voted. 11 U.S.C. § 1126(c).

*United States,* 385 F.2d 780 (3d Cir.1967), that the Court should have granted the motions to reopen the record to consider the two affidavits and the Brennan testimony. It is admitted that the motions were not served on those who had filed objections, including debentureholders. With respect to them, the Court, prior to the confirmation hearing, informed counsel that it would treat the letters of certain claim and interest holders as objections, and counsel filed a brief responding to them. Just as this motion was served on the objectors so should have been the motions to reopen. In addition, as stated in the March 19 opinion, the proffered affidavits and testimony would only serve to solidify the conclusions already made clear by the record.

An application to reopen the record calls for the exercise of judicial discretion. Such discretion is not abused when the decision not to reopen is based on the lack of credibility, relevance, or probative weight of the evidence, or when the profferred evidence is too remote to have probative value. *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1138, n. 7 (2d Cir.1979); *Hill v. Rolleri,* 615 F.2d 886, 891 (9th Cir.1980); *DuPont,* 385 F.2d at 783. Nor should that discretion be lightly invoked where reopening is sought but no reason is set forth for not having offered the evidence at trial. *Granholm v. TFL Express,* 576 F.Supp. 435, 455–56 (S.D.N.Y.1983); *In re Air Vermont, Inc.,* 45 B.R. 926, 929 (Bankr.D.Vt. 1984). Nor is it to be invoked where the profferred evidence will not change the outcome. *Abington Heights School District v. Speedspace Corporation,* 88 F.R.D. 10 (M.D.Pa.1980), *rev'd on other grounds,* 693 F.2d 284 (3d Cir.1982).

In sum, this is a case where the Court, in exercising the duty thrust upon it by Congress, examined the evidence, found some of it lacking credibility and reached the conclusion that confirmation could not be ordered. While the Debtors and Committee may disagree with Congress having assigned that duty to the Court and with the Court's ruling, this is not a case like *DuPont* where the Court, in the absence of a motion to strike, rejected testimony as legally incompetent. Finding evidence incompetent after the record is closed is one thing; finding testimony incredible or of little or no weight is another. As the court in *DuPont* stated, "If the decision of the district court had been based upon a rejection of [the witness'] credibility, the dismissal of the complaint would have been unassailable, for plaintiffs' case rested on his testimony." 385 F.2d at 783. Here, the portions of Shippee's testimony noted above were found incredible and he was the only witness.[3]

The motion must be and hereby is denied. It is

SO ORDERED.

---

**3.** It is also urged that the Court mistakenly failed to take judicial notice of the offering circular said to have been sent to debentureholders in 1983, since it is contained in the bankruptcy file. However, no one informed us where the document was located in that rather large file. One would think that if a party wishes that a court take judicial notice of the contents of a document, the least that could be done is to inform the court where the document is. Presumably, the Debtors would have the Court take judicial notice of everything in the file and claim error where it fails to do so even though no request for same was made at the hearing.