**Andrew W. VAN DYKE, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD and Federal Aviation Administration, Respondents.**

No. 01–1202.

United States Court of Appeals, District of Columbia Circuit.

Argued March 4, 2002.

Decided April 23, 2002.

Mark T. McDermott argued the cause for petitioner. With him on the briefs was Peter J. Wiernicki.

Robert P. Vente, Counsel, Federal Aviation Administration, argued the cause for respondents. With him on the brief was Peter J. Lynch, Assistant Chief Counsel, Federal Aviation Administration.

Before: EDWARDS and RANDOLPH, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is a petition for judicial review of an order of the National Transportation Safety Board affirming the decision of an administrative law judge to suspend Andrew W. Van Dyke's commercial pilot license for 45 days on a charge brought by the Federal Aviation Administration. The question is whether there is "substantial evidence" in the record to support the Board's order. *See* 49 U.S.C. § 46110(c).

On April 25, 1998, the date of the incident for which he was suspended, Van Dyke worked for Sky's the Limit, Inc., a skydiving company operating out of the Orange County Airport, in Montgomery, New York, some 50 miles north of New York City. He piloted a Beechcraft King Air in and out of the airport, dropping off one group of skydivers and picking up a new group throughout the day. At 6:15 p.m., as Van Dyke was making his descent to the airport, a regional air traffic controller instructed him to change course and approach the airport from the south. The traffic controller wanted Van Dyke to avoid heavy traffic departing from Stewart International Airport, seven miles to the

east. What happened next is the crux of the dispute between Van Dyke and the Federal Aviation Administration.

Because there is no air traffic control tower at the Orange County Airport, FAA regulations require approaching pilots to make all turns in the same direction. 14 C.F.R. § 91.126(b). The usual path is left-hand turns only. The "preferred method" is for the pilot to approach the pattern on a course 45 degrees to the downwind leg and join the pattern at midfield. The pilot then flies parallel to the runway. Once past the end of the runway, the pilot turns to the left. This is the "base leg." The pilot turns left again, into the wind, and lands. Figure 1 illustrates the standard FAA landing pattern.

**Figure 1**

**The standard FAA left-hand landing pattern.**

The runway Van Dyke approached at Orange County Airport has a different rule: all turns must be made to the right (to avoid planes from nearby Stewart International Airport). Markings, visible from the sky, indicate this. This landing pattern is illustrated in Figure 2.

596

**Figure 2**

The non-standard right hand landing pattern at Orange County airport.

In testimony before the ALJ, Bucky Gorton, the operations supervisor at the airport on April 25, 1998, said that while he was in the airport office he received a radio call from Van Dyke announcing that he was entering a left downwind pattern for landing. Gorton radioed back that this Orange County runway was right traffic, not left. Gorton said Van Dyke responded that the regional air traffic controller had told him to enter a left traffic pattern. Gorton repeated that all turns must be made to the right. Gorton then looked out of his office window, and saw a King Air flying on a left downwind leg. *See* Figure 3. The plane passed out of Gorton's sight, traveling to the east, and he saw nothing more until the plane landed. Gorton did not see the plane make any turns.

Van Dyke testified that he radioed to announce that he was on an extended left base to land at the airport, which would have required only that he turn left onto the runway. When Gorton said the plane could not land this way, Van Dyke flew past the runway and made several right turns to bring the plane down. *See* Figure 3. Jeffrey Hawke, another company pilot on the flight, confirmed Van Dyke's version. The owner of "Sky's the Limit," Jeffrey Root, saw the plane fly north across the field, as Van Dyke claims. This is segment 1 of Van Dyke's path. *See* Figure 3. Root was then distracted. When he looked up, he saw the plane turn right from the base leg into its final approach. This is segment 3 and segment 4.

The flight path according to Van Dyke

Segment of the flight that Gorton claims to have seen

Wind

**Figure 3**

**The conflicting accounts of the actual flight.**

The ALJ concluded that Van Dyke "entered a high left-hand pattern," and therefore found him in violation of three FAA regulations. The first, 14 C.F.R. § 91.126(b), requires pilots in Class G airspace – when approaching an airport without a control tower – to make all turns to the left unless the airport specifies otherwise. The second, 14 C.F.R. § 91.127(a), applies the same condition to those operating in Class E airspace, like the Orange County Airport. The third, 14 C.F.R. § 91.13, forbids operating an aircraft in a "careless or reckless manner," which Van Dyke allegedly did by making left-hand turns.

The Board, in affirming the ALJ, put its decision on the basis that the ALJ believed Gorton's version of events and disbelieved the version put forward by Van Dyke and the other two witnesses. Gorton's story, the Board wrote, provided "adequate circumstantial proof that respondent had operated contrary to the regulations cited in the Administrator's complaint" by making "left turns."

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)), taking "into account whatever in the record fairly detracts from its weight" (*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). *See Lindsay v. Nat'l Transp. Safety Bd.*, 47 F.3d 1209, 1213 (D.C.Cir. 1995). No such evidence supports the Board's conclusion here. The airport manager, Gorton, did not see Van Dyke's plane making any turns. The Board nevertheless thought Gorton's testimony carried the day because he "did observe the landing that followed the left downwind." But Gorton's observations are entirely consistent with Van Dyke's making only right turns, as Van Dyke said he did, by crossing over the runway and making right

turns until he turned right again into the downwind leg of the landing pattern.

One can imagine another theory to support the Board's conclusion. The ALJ might have concluded, in light of Van Dyke's demeanor, "not only that the witness' testimony is not true, but that the truth is the opposite of his story," *Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952). Perhaps the Board had this in mind when it stated that the ALJ had rejected not only Van Dyke's testimony, but also the testimony of Hawke and Root, on the basis of their lack of credibility. We need not decide whether this court would affirm a sanction on this ground. *See United States v. Zeigler*, 994 F.2d 845 (D.C.Cir.1993). The ALJ made no such credibility determinations. Rather than finding Van Dyke not credible, the ALJ stated in his opinion, delivered orally, "I have no reason to doubt the veracity of [Van Dyke] but as I said earlier, nor can I doubt the veracity of [Gorton and the FAA's expert witness]." Gorton and Van Dyke gave contradictory accounts on some matters other than the direction of turns so we cannot understand what the ALJ had in mind. As to Root, the ALJ never mentioned his testimony confirming Van Dyke's account. Contrary to the Board, the ALJ thus did not impugn Van Dyke's credibility or that of his supporting witnesses.

An expert witness for the FAA devoted some of his testimony to explaining why the landing pattern described by Van Dyke – with all turns made to the right – was dangerous. This may be so, but Van Dyke was prosecuted for making left turns in his landing pattern and thereby flying recklessly. The government has defended the Board's decision on that ground alone. Brief for Respondents at 16–17. That is the reasoning the Board put forward in its opinion. If there is no substantial evidence to support the Board's reasoning –

and there is none here – its order must be vacated. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

*Vacated.*